IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| LARRY DOUGLAS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 2:18-cv-02420 |
| | ) |
| DR. MARK T. ESPER, SECRETARY | ) |
| OF THE DEPARTMENT OF THE | ) |
| ARMY, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Before the Court is the Magistrate Judge's Report and Recommendation (the "Report"), dated November 6, 2019. (ECF No. 44.) The Report recommends that the Court grant in part and deny in part Defendant Dr. Mark T. Esper's Motion for Summary Judgment. (Id. at 2.) Esper objected to parts of the Report on November 20, 2019 (the "Objection"). (ECF No. 45.) Plaintiff Larry Douglas has not objected to the Report or responded to Esper's Objection.

For the following reasons, Esper's Objection is OVERRULED. The Report's recommendations are ADOPTED. Esper's Motion for Summary Judgment is GRANTED in part and DENIED in part.

## I.  Background

On June 19, 2018, Douglas filed a pro se complaint (the "Complaint") against Esper[1] alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq. ("Title VII"), the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621-634 ("ADEA"), and the Americans with Disabilities Act of 1990, as amended by the ADA Amendments Act of 2008, 42 U.S.C. §§ 12112, et seq. ("ADA").  (Compl., ECF No. 1.)  The Report recites the facts and background of the case.  (ECF No. 44 at 3-12.)  Esper does not object to that recitation.  (See ECF No. 45.)  The Court need not repeat it here.

On July 19, 2019, Esper filed a Motion for Summary Judgment under Federal Rule of Civil Procedure 56(a).  (ECF No. 30.)  The Magistrate Judge issued her Report addressing that Motion on November 6, 2019.  (ECF No. 44.)  The Report recommends granting summary judgment in favor of Esper on Douglas's claims for race discrimination, color discrimination, age discrimination, disability discrimination, and retaliation on the basis of his hearing-related disability.  (Id. at 2.)  The Report recommends denying summary judgment on Douglas's claims for disability

---

[1] In this civil action, "the head of the department, agency, or unit, as appropriate, shall be the defendant."  See 29 U.S.C. § 794a(1) (cross-referencing 42 U.S.C. § 2000e-16(c)).  Douglas worked for the Department of the Army, Army Corp of Engineers (the "Agency").  When the Complaint was filed, Esper was the Secretary of the Department of the Army.

discrimination and failure to accommodate his disability on the basis of his posttraumatic stress disorder ("PTSD"). The Report also recommends that all of Douglas's failure-to-promote claims be dismissed for failure to exhaust administrative remedies. (Id.)

On November 20, 2019, Esper objected to the Report's recommendations in part. (ECF No. 45.) Esper objects to the Report's legal conclusions about Douglas's claims of disability discrimination and failure to accommodate based on Douglas's disability of PTSD. Esper argues that there is no genuine issue of material fact and that his Motion should be granted in full. (See id.)

## II. Jurisdiction

The Court has jurisdiction over Douglas's claims. Under 28 U.S.C. § 1331, United States district courts have original jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States." The Complaint alleges that the Agency discriminated against Douglas in violation of Title VII, the ADEA, and the ADA. (Compl., ECF No. 1.) Douglas's claims arise under the laws of the United States.

## III. Standard of Review

### A. Report and Recommendation

A district court has the authority to "designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, of any motion . . . ." 28 U.S.C. § 636(b)(1)(B). Congress enacted 28 U.S.C. § 636 to relieve the burden on the federal judiciary by permitting the assignment of certain district court duties to magistrate judges. See United States v. Curtis, 237 F.3d 598, 602 (6th Cir. 2001) (citing Gomez v. United States, 490 U.S. 858, 869-70 (1989)); see also Baker v. Peterson, 67 F. App'x 308, 310 (6th Cir. 2003).

For dispositive matters, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." See Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1). After reviewing the evidence, the court is free to accept, reject, or modify the magistrate judge's proposed findings or recommendations. 28 U.S.C. § 636(b)(1). The district court is not required to review -- under a de novo or any other standard -- those aspects of the report and recommendation to which no objection is made. Thomas v. Arn, 474 U.S. 140, 150 (1985). The district court should

adopt the magistrate judge's findings and rulings to which no specific objection is filed. See id. at 151.

**B. Summary Judgment**

Under Federal Rule of Civil Procedure 56, on motion of either party, the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must show that the nonmoving party, having had sufficient opportunity for discovery, lacks evidence to support an essential element of his case. See Fed. R. Civ. P. 56(c)(1); Peeples v. City of Detroit, 891 F.3d 622, 630 (6th Cir. 2018).

When confronted with a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine dispute for trial. See Fed. R. Civ. P. 56(c). "A 'genuine' dispute exists when the plaintiff presents 'significant probative evidence' 'on which a reasonable jury could return a verdict for her.'" EEOC v. Ford Motor Co., 782 F.3d 753, 760 (6th Cir. 2015) (en banc) (quoting Chappell v. City of Cleveland, 585 F.3d 901, 913 (6th Cir. 2009)). The nonmoving party must do more than simply "show that there is some metaphysical doubt as to the material facts." Lossia v. Flagstar Bancorp, Inc., 895 F.3d 423, 428 (6th Cir. 2018) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475

U.S. 574, 586 (1986)). The nonmovant must identify specific evidence in the record that would be sufficient to justify a trier of fact's decision in the nonmovant's favor. See Fed. R. Civ. P. 56(c)(1); Hanson v. Madison Cty. Det. Ctr., 736 F. App'x 521, 527 (6th Cir. 2018). "[T]he disputed issue need not be resolved conclusively in favor of the non-moving party, [although] that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." Gaines v. Runyon, 107 F.3d 1171, 1174-75 (6th Cir. 1997) (citing First Nat'l. Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968)).

Although summary judgment must be used carefully, it "is an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action[,] rather than a disfavored procedural shortcut." FDIC v. Jeff Miller Stables, 573 F.3d 289, 294 (6th Cir. 2009) (internal quotation marks and citations omitted).

## IV. Analysis

Esper objects to specific legal conclusions in the Report. Douglas has not objected to the Report. The Court reviews de novo only the legal conclusions to which Esper has objected. See Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1); see also Arn, 474 U.S. at 150. The Court adopts all of the Report's other

6

legal conclusions and proposed findings of fact.  See Arn, 474 U.S. at 151.

**A. Recommended Findings and Esper's Objections**

The Report recommends finding that Douglas has raised a genuine issue of material fact about establishing a prima facie case for discrimination based on his PTSD disability.  (ECF No. 44 at 28-32.)  The Report also recommends finding that Douglas has raised a genuine issue of material fact about whether the Agency failed to provide a reasonable accommodation.  (Id. at 32-39.)  The Report recommends finding that Douglas has submitted evidence raising a genuine dispute of material fact about whether Douglas was qualified for his position, with or without an accommodation –– an element of establishing a prima facie case under both claims.  (See id. at 30-31, 33-36.)

The Report also recommends finding that Douglas has submitted evidence raising a genuine dispute of material fact about whether he could satisfy another element of a prima facie failure-to-accommodate claim: that the Agency failed to accommodate him.  (Id. at 37-39.)  The Report relies on affidavits of Douglas's fellow employees, Jerry Britton and Richard Qualls.  (See id. at 38-39.)

Esper argues that: (1) the Report errs in considering Douglas's temporary job duties instead of the duties listed for his position of record when evaluating Douglas's qualifications;

(2) the Report errs in concluding that there is a genuine issue of material fact about whether accommodating Douglas would have been an undue hardship; and (3) the Report errs in relying on the affidavits of Britton and Qualls because they lack personal knowledge of the matters stated in their affidavits. (See ECF No. 45.) The Court reviews these objections de novo.

**B. Legal Standards**

The Report correctly construes Douglas's Complaint to raise claims for disability discrimination and failure to accommodate under the Rehabilitation Act. See Plautz v. Potter, 156 F. App'x 812, 815-16 (6th Cir. 2005). Because there are "no significant difference[s] between the substantive standards of the ADA and the Rehabilitation Act," the Court analyzes Douglas's claims under the ADA standards. Id. at 816; see also Jones v. Potter, 488 F.3d 397, 403 (6th Cir. 2007).

Although some of the analyses overlap, disability discrimination claims based on wrongful termination and failure-to-accommodate claims are distinct causes of action under the ADA. See, e.g., EEOC v. Dolgencorp, LLC, 899 F.3d 428, 434–35 (6th Cir. 2018) (conducting separate analyses for each claim); Deister v. Auto Club Ins. Ass'n, 647 F. App'x 652, 655-57 (6th Cir. 2016) (same); Lai Ming Chui v. Donahoe, 580 F. App'x 430, 434-37 (6th Cir. 2014) (same).

## C. Disability Discrimination Claim

To recover on a claim for disability discrimination under the ADA, a plaintiff must show that he: (1) is disabled; (2) is otherwise qualified to perform the essential functions of the position, with or without accommodation; and (3) has suffered an adverse employment action because of his disability. Ferrari v. Ford Motor Co., 826 F.3d 885, 891 (6th Cir. 2016) (citing Monette v. Elec. Data Sys. Corp., 90 F.3d 1173, 1178 (6th Cir. 1996), abrogated on other grounds by Lewis v. Humboldt Acquisition Corp., 681 F.3d 312 (6th Cir. 2012) (en banc)). Where, as here, there is direct evidence of discrimination, (see ECF No. 30-27 ¶ 10); see also Hostettler v. Coll. of Wooster, 895 F.3d 844, 853 (6th Cir. 2018); Coffman v. Robert J. Young Co., 871 F. Supp. 2d 703, 714–15 (M.D. Tenn. 2012), the plaintiff need not rely on circumstantial evidence or the burden-shifting approach in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-804 (1993) to satisfy those elements. See Ferrari, 826 F.3d at 892 (citing Monette, 90 F.3d at 1182).

Esper does not object to the Report's recommended finding that Douglas has satisfied the first and third elements of a disability discrimination claim. (ECF No. 44 at 19-21, 29-32.) Esper objects to the recommended finding that there is a dispute

of material fact about whether Douglas is "otherwise qualified" under the second prong.  (ECF No. 45 at 2-5.)

Douglas can prove he is "otherwise qualified" for his position by showing that he could perform the essential functions of the position: "(a) without accommodation from the employer; (b) with an alleged 'essential' job requirement eliminated; or (c) with a proposed reasonable accommodation."  Ferrari, 826 F.3d at 891 (citing Monette, 90 F.3d at 1186).  If Douglas satisfies one or more of these prongs, Esper "bear[s] the burden of proving that a challenged job criterion is essential . . . or that a proposed accommodation will impose an undue hardship upon the [Agency]."  Id. (citing Monette, 90 F.3d at 1186).

It is undisputed that Douglas can no longer perform his job without accommodation by the Agency.  Douglas must show he is otherwise qualified for his position by showing that he could perform in his position with an allegedly essential job requirement eliminated or with a proposed reasonable accommodation.

## 1. Essential Functions

"Essential functions" are "the fundamental job duties of the employment position the individual with a disability holds or desires."  29 C.F.R. § 1630.2(n)(1).  What constitutes essential functions "is evaluated on a case-by-case basis by examining a number of factors."  Rorrer v. City of Stow, 743

F.3d 1025, 1039 (6th Cir. 2014) (citations omitted); <u>see also</u>
<u>Sch. Bd. of Nassau Cty. v. Arline</u>, 480 U.S. 273, 287 (1987).
Some non-dispositive factors courts consider when deciding
whether a job function is essential are: (i) the employer's
judgment about which functions are essential; (ii) written job
descriptions prepared before advertising or interviewing
applicants for the job; (iii) the amount of time spent on the
job performing the function; (iv) the consequences of failing to
require the incumbent to perform the function; (v) the terms of
a collective bargaining agreement; (vi) the work experience of
past incumbents in the job; and/or (vii) the current work
experience of incumbents in similar jobs. 29 C.F.R.
§ 1630.2(n)(3)(i)-(vii). To satisfy his burden of proving that
he can work with an "alleged 'essential' job requirement"
eliminated, a plaintiff need only put forth evidence that he is
qualified to perform the other functions of the job absent the
challenged job requirement. <u>Monette</u>, 90 F.3d at 1184; <u>see, e.g.</u>,
<u>Hamlin v. Charter Twp. of Flint</u>, 165 F.3d 426, 430 (6th Cir.
1999) (shifting burden to employer when the plaintiff presented
proof that he could perform the duties of Assistant Fire Chief
as long as those duties did not require firefighting).

Douglas offers evidence that he could do his job if the
"alleged 'essential' job requirement" of working on the Dredge
Hurley were eliminated. He has offered evidence that, even with

his disability, he is able to perform tasks in the electrical shop, revetment tasks, and his other duties. Douglas offers testimony in the form of a letter from a licensed clinical psychologist that states that "work[ing] . . . in the electric shop and in the field . . . do not trigger [Douglas's] symptoms." (ECF No. 36-4 at 2.) Douglas has submitted a letter from another therapist that states, "in terms of accommodation, assigning Mr. Douglas to [electrical shop and revetment] duties seem[s] to allow him to work without re-experiencing the trauma associated with direct contact with the Mississippi River." (Id. at 6.) Douglas has met his burden in proving that he could do his job if the alleged essential job requirement of working on the Dredge Hurley were eliminated.

### 2. Proposed Reasonable Accommodation

A "reasonable accommodation" may include "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations . . . ." 42 U.S.C. § 12111(9)(B). A plaintiff bears the burden of proposing an accommodation and showing that that accommodation is objectively reasonable. Monette, 90 F.3d at 1183. This initial burden is not onerous. Bower v. Fed.

12

_Express Corp._, 287 F. Supp. 2d 840, 846 (W.D. Tenn. 2003) (citing _Cehrs v. Northeast Ohio Alzheimer's Research Ctr._, 155 F.3d 775, 781 (6th Cir. 1998)).

Douglas has satisfied his non-onerous burden of proposing a reasonable accommodation. Esper argues that allowing Douglas to convert his "temporary work" in the electric shop to a "full-time year-round position" is not a reasonable accommodation request because it would require the Agency to create a new position. (_See_ ECF No. 45 at 5-6.) An employer is not required to create a new position as an accommodation. _See Hoskins v. Oakland Cnty. Sheriff's Dep't_, 227 F.3d 719, 730 (6th Cir. 2000) (citing _Cassidy v. Detroit Edison Co._, 138 F.3d 629, 634 (6th Cir. 1998)). However, Douglas does not ask that his electrical shop duties to be converted to a "full-time year-round position." Douglas asks to continue his work in the electrical shop and other similar duties without the requirement of working on the Dredge Hurley. (_See_ ECF No. 30-2 ¶ 18) (stating that "the Agency treated [Douglas's request] as a reasonable accommodation request that [Douglas] not be directed to return to work on the Dredge Hurley while it was on the water"); (_see also_ ECF No. 30-3 at 55) (Douglas responds that he would have taken "anything" as an accommodation). Douglas has shown that his disability could have been accommodated by job restructuring and working part-time (_e.g._, eight months of the year completing maintenance

13

worker duties and not working the other four months on the Dredge Hurley completing pipelineman duties). See 42 U.S.C. § 12111(9)(B) (a reasonable accommodation includes "job restructuring, part-time or modified work schedules . . . ."). That accommodation "seems reasonable on its face." U.S. Airways, Inc. v. Barnett, 535 U.S. 391, 401 (2002). It would simply require the Agency to allow Douglas to continue doing the work he had done for eight months of the year, had been doing for many years, and did for a time after informing the Agency of his disability. Douglas has met his burden of proposing a reasonable accommodation.

### 3. Esper's Burden

Because Douglas has satisfied his burden of proving that he is "otherwise qualified" for his position, the burden shifts to Esper to prove that working on the Dredge Hurley is an "essential function" or that Douglas's proposed accommodation would impose an "undue hardship" on the Agency. Ferrari, 826 F.3d at 891 (citing Monette, 90 F.3d at 1186).

### a. Essential Functions

"[T]he determination of whether a given function is 'essential' within the meaning of the ADA and regulations promulgated thereunder is typically a question of fact for the jury and thus not suitable for resolution through a motion for judgment as a matter of law . . . ." Brickers v. Cleveland Bd.

14

of Educ., 145 F.3d 846, 849 (6th Cir. 1998) (citing Hall v. United States Postal Serv., 857 F.2d 1073, 1079 (6th Cir. 1988)); see Rorrer, 743 F.3d at 1039 (citing Keith v. Cty. of Oakland, 703 F.3d 918, 926 (6th Cir. 2013)). "Summary judgment is improper when evidence on the issue is 'mixed.'" Vaughn v. Parkwest Med. Ctr., 716 F. App'x 428, 431 (6th Cir. 2017) (citing Rorrer, 743 F.3d at 1041–43).

Esper has not carried his burden of proving that working aboard the Dredge Hurley was an essential function of Douglas's job. Esper's argument is conclusory: "[T]he essential duties of [Douglas's] position of Pipelineman was to perform duties while aboard the Dredge Hurley." (ECF No. 30-1 at 16.) That is not enough. See Rorrer, 743 F.3d at 1039 ("At the summary judgment stage, the employer's judgment will not be dispositive on whether a function is essential . . . ."). The Court need not search the record for evidence that would satisfy Esper's burden. Cf. In re Morris, 260 F.3d 654, 665 (6th Cir. 2001) (the trial court has no duty to "search the entire record to establish that it is bereft of a genuine issue of material fact").

Both parties have submitted mixed evidence about the work Douglas did and the exact nature of his job. (Compare ECF No. 30-21 at 24-28, with No. 36-6 at 2-3.) The Court is ill-suited to resolve those questions because they are fact-intensive. See Hoskins, 227 F.3d at 726 ("The inquiry into whether a function

is essential is highly fact specific."). Given the unique nature of Douglas's job, questions about his work and which of his duties were essential are properly left to a jury. See Vaughn, 716 F. App'x at 431–32; Rorrer, 743 F.3d at 1041–42. Summary judgment on the issue of essential functions is not warranted. See Hostettler, 895 F.3d at 855.

### b. Undue Hardship

In determining whether an accommodation would impose an undue hardship on an employer, courts consider several factors, including: (i) the nature and cost of the accommodation; (ii) the overall financial resources of the employer; the number of persons employed by the employer; the effect on expenses and resources, or the impact otherwise of such accommodation upon the employer; (iii) the overall financial resources, size, number, type, and location of the employer; and (iv) the type of operation or operations of the employer, including the composition, structure, and functions of the workforce of the employer; the geographic separateness, administrative, or fiscal relationship of the facility or facilities in question to the employer. 42 U.S.C. § 12111(10)(B)(i-iv).

Esper argues that allowing Douglas to convert the "temporary work" in the electric shop to a "full-time year-round position" would be an undue hardship on the Agency. (ECF No. 45 at 6.) Esper's undue hardship argument is two-fold: (1) hardship due to

shortage of personnel; and (2) financial hardship. Esper argues that "the Dredge had gone without Plaintiff over two seasons, and it was a hardship on the Dredge and the rest of the crew to be missing one Pipelineman aboard. The Agency decided to propose removal because . . . [it] needed to fill the position on the dredge." (ECF No. 30-1 at 19; see also No. 30-5 ¶ 25.) Esper also argues that "paying Mr. Douglas at the same rate of pay as his Pipelineman pay for performing incidental work in the Electric Shop during the off season was a hardship dictated by the 1997 Settlement Agreement as long as Mr. Douglas remained in the Pipelineman position." (ECF No. 45 at 6.)

It is unclear why Douglas's proposed reasonable accommodation of working part-time would not solve the two undue hardships that Esper alleges. Accommodating Douglas by not employing him for four months would allow that salary expense to be used to hire another person to work on the Dredge Hurley. It appears that the Agency did this at some point. (See ECF No. 30-5 at 6 ¶ 25); (ECF No. 30-30 at 9) ("Well, in the absence of having Mr. Douglas able to perform the position, we had to have temporary people working it."). That accommodation would be at no or minimal additional cost to the Agency because it would not spend significantly more than it was paying Douglas. The accommodation would solve the shortage-of-personnel and

financial hardships that Esper alleges.  The resolution is one for the jury.

In considering Esper's arguments and the undue hardship factors under the ADA, Esper has not satisfied his burden of establishing that accommodating Douglas in the way he proposed would have been an undue hardship.  See Ford Motor Co., 782 F.3d at 777 (denying summary judgment on the undue hardship issue when the employer did not meet its burden); 42 U.S.C. § 12111(10)(B)(i)-(iv).

Because Esper has not met his burden of proving that Douglas is not otherwise qualified for his position, the Court OVERRULES Esper's objections to the Report's recommendation that there is a genuine issue of material fact about whether Douglas was qualified for his position and that accommodating Douglas would be an undue hardship.

### D. Failure to Accommodate

To establish a prima facie case of failure to accommodate under the ADA, Douglas must show that:  (1) he is disabled; (2) he is otherwise qualified for the position, with or without reasonable accommodation; (3) the Agency knew or had reason to know about his disability; (4) he requested an accommodation; and (5) the Agency failed to provide the necessary accommodation. Mosby-Meachem v. Memphis Light, Gas & Water Div., 883 F.3d 595, 603 (6th Cir. 2018) (citing Johnson v. Cleveland City Sch. Dist.,

443 F. App'x 974, 982–83 (6th Cir. 2011)). "Once a plaintiff establishes a prima facie case, the burden shifts to the employer to demonstrate that any particular accommodation would impose an undue hardship on the employer." Id. (citing Johnson, 443 F. App'x at 983).

The Report recommends finding that Douglas could establish the first, third, and fourth[2] prongs of a prima facie failure-to-accommodate claim. (ECF No. 44 at 33.) The Report also recommends finding that there is a genuine issue of material fact about whether Douglas could establish the second and fifth prongs. (Id. at 36, 39.) Esper objects to the Report's findings on the second prong and the absence of undue hardship. (ECF No. 45 at 1-8).

As discussed above, there is a genuine dispute of material fact about which of Douglas's job functions were essential (i.e., whether Douglas was otherwise qualified for his position). See supra, at 14-16. That determination is dispositive of the second prong of Douglas's failure-to-accommodate claim because the standard is the same under both analyses. See Williams v. AT&T

---

[2] The Report states that the fourth prong of a prima facie failure-to-accommodate claim requires proving that "an accommodation was needed." (See ECF No. 44 at 33.) The Sixth Circuit's most recent iteration of the test requires the plaintiff to prove that "he requested an accommodation." Mosby-Meachem, 883 F.3d at 603. It is undisputed that Douglas requested an accommodation for his PTSD. (See ECF No. 30-2 ¶ 18; No. 30-7 at 1; No. 30-8 ¶ 2.)

Mobility Servs. LLC, 847 F.3d 384, 391-95 (6th Cir. 2017);

Johnson, 443 F. App'x at 985 (citing Denczak v. Ford Motor Co.,

215 F. App'x 442, 444 (6th Cir. 2007)); Hedrick v. W. Reserve

Care Sys., 355 F.3d 444, 456 (6th Cir. 2004); see also 42 U.S.C.

§ 12111(8); 29 C.F.R. § 1630.2(m).

The undue hardship analyses of a failure-to-accommodate

claim and a disability discrimination claim are the same as well.

See Rorrer, 743 F.3d at 1045; see also 42 U.S.C.

§ 12112(b)(5)(A); 29 C.F.R. § 1630.2(p). The Court's finding

that Esper has not carried his burden of establishing that

accommodating Douglas would be an undue hardship under Douglas's

disability discrimination claim is dispositive of Esper's

defense to Douglas's failure-to-accommodate claim.[3]

The Court OVERRULES Esper's objection to the Report's

recommendation that there is a genuine issue of material fact

about whether Douglas can satisfy his failure-to-accommodate

claim.

---

[3] The Report analyzes Esper's undue hardship arguments under the
fifth prong of a prima facie failure-to-accommodate claim. (ECF No.
44 at 37-39.) Determining whether an employer failed to provide an
accommodation and whether that accommodation would impose an undue
hardship on an employer are separate analyses. See Johnson, 443 F.
App'x at 983. The record establishes an issue for trial about
whether the Agency failed to provide the necessary accommodation.
(See ECF No. 30-2 ¶¶ 21, 29, 54; No. 30-15 ¶ 1; No. 30-27 ¶ 10.)

**E. Britton and Qualls's Testimony**

Esper objects to the Report's reliance on the testimony of Britton and Qualls. (ECF No. 45 at 8-12.) Esper's objection goes to the evidentiary sufficiency of their testimony, arguing that they have no personal knowledge of the matters stated in their affidavits and relied on in the Report. (See id.)

The Report relies on Britton and Qualls's testimony in recommending that there is a dispute of material fact about whether there was a vacant position for which Douglas was qualified and to which he could be reassigned. (See ECF No. 44 at 37-39); see also 42 U.S.C. § 12111(9)(B) (a reasonable accommodation may include "reassignment to a vacant position . . . ."); 29 C.F.R. § 1630.2(o)(2)(ii). Because the Court's decision turns on whether there was a reasonable accommodation that the Agency could have provided, specifically, working part-time with the elimination of certain job responsibilities, there is no need to analyze whether there was a vacant position to which Douglas could have been reassigned as an accommodation. The Court need not address Britton and Qualls's testimony on this point or Esper's objection to the Report's reliance on it.

After concluding that Douglas could plausibly establish prima facie disability discrimination and failure-to-accommodate claims, the Report conducts a McDonnell-Douglas burden-shifting

analysis. (See ECF No. 44 at 39-44.) Under that analysis, the Report relies on Britton and Qualls's affidavits in recommending finding that there is a genuine dispute of material fact about whether the Agency's reasons for not accommodating Douglas were pretextual. (Id. at 41-43.)

The Report's application of McDonnell-Douglas's burden-shifting framework for Douglas's claims is unnecessary. "Because 'not making reasonable accommodations' is listed in the ADA's definition of disability discrimination, 'claims premised upon an employer's failure to offer a reasonable accommodation necessarily involve direct evidence (the failure to accommodate) of discrimination.'" See Morrissey v. Laurel Health Care Co., No. 18-1704, 2019 WL 6486841, at *3 (6th Cir. Dec. 3, 2019) (citing Kleiber v. Honda of Am. Mfg., Inc., 485 F.3d 862, 868 (6th Cir. 2007)) (internal citation omitted); see also Brumley v. United Parcel Serv., Inc., 909 F.3d 834, 839 (6th Cir. 2018); Green v. BakeMark USA, LLC, 683 F. App'x 486, 491 (6th Cir. 2017).

Because the Report's McDonnell-Douglas analysis is unnecessary, any objection to the reliance on Britton and Qualls's testimony in that analysis is not germane. The Court OVERRULES Esper's objections to the Report's consideration of Britton and Qualls's testimony.

**V. Conclusion**

For the foregoing reasons, the Report is ADOPTED. Esper's Motion for Summary Judgment is GRANTED in part and DENIED in part.

So ordered this 14th day of January, 2020.

/s/ *Samuel H. Mays, Jr.*
Samuel H. Mays, Jr.
UNITED STATES DISTRICT JUDGE